(38 Misc. Rep. 241.)

### PEOPLE ex rel. CLARK v. NEW YORK STATE REFORMATORY FOR WOMEN AT BEDFORD.

(Supreme Court, Special Term, Kings County.   June, 1902.)

**1. CRIMINAL LAW—DISORDERLY CONDUCT—CONVICTION BY MAGISTRATE—JURISDICTION.**

Former New York City Charter, § 1458, defines "disorderly conduct tending to a breach of the peace," while Greater New York Charter, § 1409, gives to the court of special sessions exclusive jurisdiction of misdemeanors.   Sections 1459 and 1461 of the former charter (Greater New York Charter, § 1610) give magistrates authority only to hold to bail for good behavior persons accused of "disorderly conduct which tends to a breach of peace."   *Held*, that under these statutes a magistrate had no authority to try and convict a person for "disorderly conduct."

**2. SAME.**

Code Cr. Proc. § 887, classes among vagrants "common prostitutes" who have no lawful means of support, and former New York City Charter, § 1464, makes the same classification, and prescribes how they are to be dealt with.   Laws 1896, c. 546, amended 1899 (chapter 632), permits women between the ages of 15 and 30 years to be committed to the state reformatory for women on being convicted by any magistrate of petit larceny, habitual drunkenness, or of being a "common prostitute," etc.   *Held*, that these statutes give no authority to a magistrate to commit to the state reformatory on a conviction of being a "public prostitute," no charge as to vagrancy being made.

Habeas corpus by the people, on the relation of Mary Clark, against the New York State Reformatory for Women at Bedford.   Hearing on demurrer to return to the writ.   Relator discharged.

The warrant of commitment is that the relator was convicted of being a "public prostitute."   The record of conviction, complaint and other papers are vaguely for disorderly conduct in soliciting men in the street.

Amos H. Evans, for relator.
Henry G. Gray, opposed.

GAYNOR, J.   So contradictory and indefinite are the complaint, record of conviction, warrant of commitment and magistrate's return, that it is quite impossible to ascertain on what charge, statute or theory the magistrate took jurisdiction in this case, and tried and convicted the relator, and sentenced her to three years imprisonment in the state reformatory for women at Bedford.

1.   There are sections of the charter of the former city of New York referring to and to some extent defining disorderly conduct tending to a breach of the peace.   Section 1458 specifically defines three offenses of that category.   If they be misdemeanors, magistrates have no jurisdiction to try them, exclusive jurisdiction to try misdemeanors being given by the present city charter to the courts of special sessions.   Section 1409.   Kolzem v. Railroad Co. (Com. Pl.) 20 N. Y. Supp. 700; People v. Patterson (May 16, 1902) 77 N. Y. Supp. 155; People ex rel. Frank v. Keeper of State Reformatory, Id. 145. If they be not, then all that the magistrates have jurisdiction to do in respect of them is to hold the accused in bail for good behavior, that

being the extent of the jurisdiction given to them in the case of disorderly conduct which tends to a breach of the peace. Former Charter, §§ 1459, 1461. Each of the foregoing sections of the former charter seems to be kept in life by the present charter. Section 1610.

As for the phrase "disorderly conduct" standing alone, there is no such offense. If under that phrase policemen and magistrates were free to call anything they choose disorderly conduct, and to arrest and hold therefor, no one would be safe. But policemen and magistrates cannot create or define criminal offenses. That can only be done by the legislature, and cannot under our form of government be delegated.

2. One of the persons enumerated as "vagrants" in section 887 of the Code of Criminal Procedure is "a common prostitute who has no lawful employment whereby to maintain herself," and the sections which next follow provide for the disposition of vagrants. Section 1464 of the said former charter also classes "common prostitutes who have no lawful employment whereby to maintain themselves" as vagrants, and the next two sections prescribe how they are to be dealt with. The warrant of commitment here is that the relator was convicted of being a "public prostitute," which may be the magistrate's substitute for the common law and also statutory phrase "common prostitute." But the proceeding was obviously not for vagrancy. The relator was not charged, convicted or dealt with as a vagrant. She may have had a lawful employment by which she supported herself.

Section 146 of the state charities law (chapter 546, Laws 1896, amended by chapter 632, Laws 1899) permits women between the ages of 15 and 30 years to be imprisoned in the state reformatory for women at Bedford on being "convicted by any magistrate of petit larceny, habitual drunkenness, of being a common prostitute, of frequenting disorderly houses or houses of prostitution, or of a misdemeanor." But it is obvious that this statute was not intended to create criminal offenses or confer jurisdiction on magistrates. It is loose and unscientific, but has reference only to existing offenses and conditions. If this relator had been found guilty under the said vagrancy sections of the Code of Criminal Procedure, or former charter, of being a common prostitute without any lawful employment to support herself as there defined, I suppose she could have been sent to this institution. And magistrates have jurisdiction under the said code section for "vagrants," as well as under section 899 of the same code concerning "disorderly persons," as such persons are not classed as misdemeanants, but as persons to be summarily dealt with. They are not convicted of any crime under the said sections, and may in addition be tried and convicted of the acts for which they are summarily dealt with under the said sections, if such acts come within the definition of any crime. People v. Sadler, 97 N. Y. 146.

The relator is discharged.